UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

HOGAN LOGISTICS, INC.,           )
                                 )
        Plaintiff,               )
                                 )
    vs.                          )        Case No. 4:16-CV-1541 (CEJ)
                                 )
DAVIS TRANSFER COMPANY, INC.,    )
                                 )
        Defendant.               )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of defendant Davis Transfer
Company, Inc., for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c).
Plaintiff has filed a response in opposition and the issues are fully briefed.

### I.    Background

Plaintiff Hogan Logistics is a freight broker and third-party logistics company
that provides nationwide shipping services for its customers. Plaintiff contracts with
freight carriers, such as defendant Davis Transfer, to complete the actual transport
of its customers' goods. Complaint ¶¶ 9-10 [Doc. # 8]. Since 2009, plaintiff has
had a transportation agreement with nonparty Imperial Savannah, L.P., the parent
company of Imperial Sugar. Under this agreement, Imperial Sugar agreed to
exclusively utilize plaintiff to transport goods from its Georgia facilities and plaintiff
agreed to contract with carriers to ship Imperial Sugar's goods. Id. ¶¶ 11-14.

Defendant Davis Transfer is an independent freight carrier based in Georgia.
Id. at ¶ 10. On October 1, 2013, the parties executed a broker-carrier agreement,
pursuant to which defendant agreed to ship freight for plaintiff's customers. Id. at
¶¶ 16-18. Defendant's primary responsibility under the agreement was to transfer

freight from two Imperial Sugar facilities in Georgia to destinations throughout the southeastern United States. Id. at ¶ 19. The agreement had a one-year term which automatically renewed on October 1, 2014 and October 1, 2015. Id. at ¶¶ 24-25.

The parties' agreement included the following provision:

**10.  TRAFFIC SOLICITATION**
During the term of this Agreement and for a period of 12 months after termination or expiration, Carrier [Davis Transfer] shall not solicit or accept traffic from any Customer where (1) the availability of such traffic or such Customer first became known to Carrier as a result of Broker's [Hogan Logistics] efforts, or (2) where such traffic or such Customer was first tendered, directly or indirectly, to the Carrier by Broker. . . .  The term "Customer" specifically includes, without limitation, Imperial Sugar.

Broker-Carrier Agreement (Agreement) ¶ 10 [Doc. # 10 p. 4].  Under the contract, the defendant's breach of the "back-solicitation" provision entitles plaintiff to a 20% commission on all "involved traffic" carried by defendant for a twelve-month period. Id.

In November 2015, plaintiff contacted defendant regarding Imperial Sugar's freight needs for 2016. When defendant stated that it intended to raise its rates on most shipping routes, plaintiff replied that  defendant's  rates were already 10 to 12 percent higher than the market rate. Plaintiff stated that it would stop using defendant to ship Imperial Sugar's freight if the rates increased. Defendant ultimately agreed not to raise its prices and plaintiff used defendant to carry Imperial Sugar's freight in early 2016. [Doc. # 8 at ¶¶ 26-28]. In May 2016, Imperial Sugar stopped using plaintiff to broker regional shipments. Plaintiff subsequently learned that defendant had approached Imperial Sugar and worked out its own deal to provide shipping services to Imperial Sugar. Id. at ¶¶ 28-32.

Plaintiff filed suit in state court, asserting claims of breach of contract, breach

of the duty of good faith and fair dealing, and tortious interference. After removing the action to this Court, defendant filed its answer and now moves for judgment on the pleadings.

### III. Legal Standard

The same standard of review applies to motions under Federal Rules of Civil Procedure 12(c) and 12(b)(6). Ashley Cty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009). Thus, the factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (stating that a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Scheuer, 416 U.S. at 236.  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see id. at 563 (stating that the "no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45–46 (1957), "has earned its retirement"); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–84 (2009) (holding that the pleading standard set forth in Twombly applies to all civil actions). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

A court does not consider matters outside the pleadings under Rule 12(c). Fed.R.Civ.P. 12(d); <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). It may, however, consider matters of public records, materials that do not contradict the complaint, exhibits attached to the pleadings, and materials necessarily embraced by the complaint. <u>Mills v. City of Grand Forks</u>, 614 F.3d 495, 498 (8th Cir. 2010). Defendant has provided a copy of the parties' broker-carrier agreement, which the Court has considered as a matter necessarily embraced by the complaint.

## IV.    Discussion

### A. Breach of Contract

The parties' dispute centers on the proper interpretation of the contract's traffic solicitation provision, Section 10, under Missouri law.[1] Interpretation of a contract is a question of law. <u>Sonoma Mgmt. Co. v. Boessen</u>, 70 S.W.3d 475, 479 (Mo. Ct. App. 2002) (citation omitted). "The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent." <u>J.H. Berra Constr. Co. v. City of Washington</u>, No. ED 104529, 2017 WL 588182, at *2 (Mo. Ct. App. Feb. 14, 2017) (<u>quoting</u> <u>Dunn Indus. Group, Inc. v. City of Sugar Creek</u>, 112 S.W.3d 421, 428 (Mo. banc 2003)). The plain, ordinary, and usual meaning of a contract's words are used, and the whole document is considered. <u>Jackson Cty. v. McClain Enterprises, Inc.</u>, 190 S.W.3d 633, 640 (Mo. Ct. App. 2006) (citation omitted).

---

[1] The parties agree that, pursuant to the "governing law" provision of the agreement, [Doc. # 10 at ¶ 14], Missouri law applies to plaintiff's claims for breach of contract and the implied duty of good faith and fair dealing.

"Under Missouri law, determining the meaning of an unambiguous provision is a question of law for the court, determined by giving language its plain and ordinary meaning without resort to extrinsic evidence." <u>Shaw Hofstra & Assocs. v. Ladco Dev., Inc.</u>, 673 F.3d 819, 825 (8th Cir. 2012) (citation omitted). "A contract is ambiguous when the terms are susceptible of more than one reasonable meaning." <u>Id.</u> <u>see also</u> <u>U.S. Neurosurgical, Inc. v. Midwest Div.-RMC, LLC</u>, 303 S.W.3d 660, 665 (Mo. Ct. App. 2010) ("Disputed language is ambiguous if an average person would find it reasonably susceptible of more than one meaning."). Under Missouri law, "once a contract is deemed ambiguous, a question of fact arises and the issue is reserved for the jury." <u>Shaw Hofstra</u>, 673 F.3d at 827 (citation and alteration omitted).

Defendant asserts that the contract's prohibition against back-solicitation applies only if defendant never hauled Imperial Sugar's traffic before plaintiff became the broker for Imperial Sugar. Defendant argues that plaintiff does not and apparently cannot allege that defendant was a stranger to Imperial Sugar before the parties' agreement. Plaintiff counters that the complaint states a valid claim for relief, regardless of defendant's prior relationship to Imperial Sugar. In particular, plaintiff argues that after the parties agreed on defendant's 2016 pricing, plaintiff tendered and defendant accepted Imperial Sugar's freight needs for 2016. Thus, plaintiff asserts, defendant first became aware of Imperial Sugar's 2016 traffic through plaintiff's efforts and its solicitation of that traffic is a breach of Section 10.

The parties' arguments are based on two different meanings for the term "traffic," as used in Section 10. The contract does not define the term and the parties do not cite any case law, regulation, or industry standard that supplies a

commonly-understood meaning.[2] Defendant implies that in the context of broker –
carrier agreements, "traffic" means the existence of a particular shipper that
needed transportation for its goods, while plaintiff implies that "traffic" means that
shipper's transportation needs from year to year. As a matter of plain language,
both interpretations are plausible.[3] At this stage of the proceedings, the Court
cannot determine which interpretation best reflects the parties' intent. Defendant's
motion for judgment on the pleadings will be denied with respect to Count I.

## B.    Breach of Duty of Good Faith and Fair Dealing

Plaintiff alleges that defendant breached the duty of good faith and fair
dealing when it directly solicited traffic from Imperial Sugar.[4] "In Missouri, all
contracts have an implied covenant of good faith and fair dealing." Lucero v.
Curators of Univ. of Missouri, 400 S.W.3d 1, 9 (Mo. Ct. App. 2013) (citation
omitted). Under Missouri law, the "implied covenant will not . . . be imposed where
the parties expressly address the matter at issue in their contract." State v.
Nationwide Life Ins. Co., 340 S.W.3d 161, 194 (Mo. Ct. App. 2011) ("There is no
authority for the proposition that a party has an implied duty of good faith and fair
dealing to agree to renew a contract that is set to expire by its negotiated terms.").
Defendant's argument for dismissal of this claim rests upon its contention that
Section 10 did not prohibit its conduct. Again, this issue remains to be determined

---

[2] Defendant cites Merriam Wester's Dictionary for a definition of "traffic" as "the business of
transporting passengers or freight." [Doc. # 27 at 5 n.1 (citing https://www.merriam-
webster.com/dictionary/traffic). Appearing right above defendant's proffered definition is
one consistent with plaintiff's interpretation: "the movement (as of vehicles or pedestrians)
through an area or along a route." Id. (last visited on Mar. 29, 2017) (emphasis added).
[3] Plaintiff argues that defendant's interpretation of Section 10 makes superfluous the
definition of "customer" as "includ[ing], without limitation, Imperial Sugar." The parties'
intent for including a provision naming Imperial Sugar cannot be determined on the basis of
the pleadings.
[4] Plaintiff states in its opposition that this claim is pleaded in the alternative to its contract
claim. [Doc. # 26 at 10].

at a later stage of the proceedings. Defendant's motion for judgment on the pleadings will be denied with respect to Count II.

### C. Tortious Interference

Plaintiff asserts that defendant interfered in its relationship with Imperial Sugar by using plaintiff's confidential pricing information to solicit the shipping business away from plaintiff. Defendant asserts that (1) under Missouri conflict-of-laws rules, the substantive law of Georgia applies; (2) plaintiff fails to establish an element of its tortious interference claim under either Georgia or Missouri law; and (3) the economic loss doctrine bars plaintiff's claim under the laws of both states. Plaintiff counters that it is entitled to proceed with its claim under either Georgia or Missouri law and that application of the economic loss doctrine must await further factual development.

"District courts sitting in diversity apply the choice-of-law rules of the state where they sit." Winter v. Novartis Pharm. Corp., 739 F.3d 405, 410 (8th Cir. 2014). Missouri follows the "most significant relationship" test from the Restatement (Second) of Conflicts of Laws § 145 for resolving choice-of-law questions in tort actions. Zafer Chiropractic & Sports Injuries, P.A. v. Hermann, 501 S.W.3d 545, 550 (Mo. Ct. App. 2016). As defendant notes, the factors to be considered under § 145 are: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered. Am. Guarantee & Liab. Ins. Co. v. U.S. Fid. & Guar. Co., 668 F.3d 991, 996 (8th Cir. 2012) (citing Thompson by Thompson v. Crawford, 833 S.W.2d 868, 870 (Mo.

1992)). These contacts are to be evaluated according to their relative importance with respect to the particular issue.

The Court must apply these contacts with an eye toward quality, not simply quantity, because "[d]ifferent [contacts] may be entitled to more weight in regard to one issue than in regard to another." New v. Borg-Warner Corp., No. 13-00675-CV-W-DGK, 2015 WL 5167643, at *3 (W.D. Mo. Sept. 3, 2015) (quoting Dillard v. Shaughnessy, Fickel & Scott Architects, Inc., 943 S.W.2d 711, 715 (Mo. Ct. App. 1997). In weighing these contacts, the Court must consider the § 6 factors:

(a) The needs of the interstate and international systems,

(b) The relevant policies of the forum,

(c) The relevant policies of other interested states and the relative interest of those states in the determination of the particular issue,

(d) The protection of justified expectations,

(e) The basic policies underlying the particular field of law,

(f) Certainty, predictability and uniformity of result, and

(g) Ease in the determination and application of the law to be applied.

Id. (quoting Restatement (Second) of Conflict of Laws § 6 (1971)). Defendant does not provide much analysis of the choice-of-law question beyond citing the § 145 factors and thus, for the purposes of this motion only, the Court considers plaintiff's claim under the laws of both Georgia and Missouri.

Under Georgia law, to recover under a theory of tortious interference with business relations, plaintiff must show that defendant: (1) acted improperly and without privilege, (2) acted purposely and with malice with the intent to injure, (3) induced a third party not to continue a business relationship with the plaintiff, and (4) caused plaintiff financial injury. ASC Const. Equip. USA, Inc. v. City Commercial

Real Estate, Inc., 693 S.E.2d 559, 563–64 (Ga. Ct. App. 2010) (citation omitted). The elements of the claim under Missouri law are: (1) a contract or valid business relationship or expectancy; (2) the defendant's knowledge of the relationship or contract; (3) intentional interference by the defendant causing or inducing a breach of the contract or relationship; (4) the absence of justification; and (5) damages resulting from the conduct of the defendant. Hertz Corp. v. RAKS Hosp., Inc., 196 S.W.3d 536, 549 (Mo. Ct. App. 2006) (citation omitted).

Defendant argues that its prior relationship with Imperial Sugar prevents plaintiff from establishing that it acted without privilege, as required by Georgia law, or the absence of justification as required by Missouri law. As discussed above, the legal effect of that prior relationship has yet to be determined and so defendant has not established that plaintiff cannot prevail on the merits of its claim.

Defendant also asserts that plaintiff's tortious interference claim is barred by the economic loss doctrine, which both states have adopted. See City of Cairo v. Hightower Consulting Engineers, Inc., 629 S.E.2d 518, 525 (2006) (Georgia's "economic loss rule" provides that contracting party who suffers purely economic losses must seek remedy in contract and not in tort); see also Trademark Med., LLC v. Birchwood Labs., Inc., 22 F. Supp. 3d 998, 1002 (E.D. Mo. 2014) (Missouri's "economic loss doctrine prohibits a plaintiff from seeking to recover in tort for economic losses that are contractual in nature."). Both states also recognize exceptions to the doctrine that may apply in this case, because plaintiff alleges that defendant approached Imperial Sugar after it received plaintiff's confidential pricing information. See Hanover Ins. Co. v. Hermosa Const. Grp., LLC, 57 F. Supp. 3d 1389, 1396 (N.D. Ga. 2014) (where "an independent duty exists under the law, the

economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.") (citation omitted); <u>see also</u> <u>Compass Bank v. Eager Rd. Assocs., LLC</u>, 922 F. Supp. 2d 818, 827 (E.D. Mo. 2013) ("A fraud claim <u>independent of the contract</u> is actionable, but it must be based upon a misrepresentation that was <u>outside of or collateral to the contract</u>, such as many claims of fraudulent inducement.") (<u>quoting</u> <u>AKA Distrib. Co. v. Whirlpool Corp.</u>, 137 F.3d 1083, 1086 (8th Cir. 1998) (emphasis in original)). It is premature to decide at this stage of the proceedings whether the economic loss doctrine bars plaintiff's tortious interference claim.[5]

**\*\*\*\***

For the reasons discussed above,

**IT IS HEREBY ORDERED** that defendant's motion for judgment on the pleadings [Doc. # 22] is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 27th day of April, 2017.

---

[5] This Court recently found that Missouri's economic loss doctrine barred a fraudulent misrepresentation claim. <u>HHCS Pharmacy, Inc. v. Express Scripts, Inc.</u>, No. 4:16-CV-1169 (CEJ), 2016 WL 7324968, at *5 (E.D. Mo. Dec. 16, 2016). In that case, however, the plaintiff did not contest the application of the doctrine to its claim. Another district court in Missouri has determined that "the Missouri Supreme Court would not apply the economic loss doctrine to [plaintiff's] tortious interference or fraudulent misrepresentation claims." <u>Mea Fin. Enterprises, LLC v. Fiserv Sols., Inc.</u>, No. 13-05041-CV-SW-BP, 2013 WL 12155467, at *3 (W.D. Mo. Oct. 16, 2013). Thus, the Court declines to find that the decision in <u>HHCS Pharmacy</u> determines the outcome here.