UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HOGAN LOGISTICS, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 4:16-CV-1541 CAS |
| DAVIS TRANSFER COMPANY, INC., | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff Hogan Logistics, Inc.'s ("Hogan" or "plaintiff") motion to exclude the testimony of defendant's expert witness Henry E. Seaton pursuant to Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Defendant Davis Transfer Company, Inc. ("Davis" or "defendant") opposes the motion and it is fully briefed. Neither party has requested an evidentiary hearing or oral argument, and the parties have submitted an evidentiary record including exhibits and deposition testimony. The Court finds it can make a proper Daubert analysis without the need for a hearing or argument.

For the following reasons, Hogan's motion to exclude defendant's expert witness will be granted in part and denied in part.

**I. Background**

Plaintiff Hogan is a freight broker and third-party logistics company that provides nationwide shipping services for its customers, which at one time included Imperial Sugar Company ("ISC"). Hogan contracts with freight carriers, such as defendant Davis, to complete the actual transport of its customers' goods. The parties entered into a Broker-Carrier Agreement (the "Agreement") in

October 2013, pursuant to which Davis agreed to ship freight for Hogan's customers, primarily from two ISC facilities in Georgia to destinations across the southeastern United States.

Section 10 of the Agreement is titled "Traffic Solicitation" and is referred to by the parties as a "back-solicitation clause." Hogan contends this clause prohibits Davis from soliciting or accepting any freight traffic from Hogan's customers directly. Hogan asserts that in May 2016, Davis wrongfully solicited freight traffic from ISC in violation of the Agreement's back-solicitation clause. As a result, Hogan lost the portion of ISC's freight traffic that Davis previously carried on Hogan's behalf, and Davis carried freight directly for ISC rather than as a contract carrier for Hogan.

Section 10 of the Agreement provides:

**10. TRAFFIC SOLICITATION**

During the term of this Agreement and for a period of 12 months after termination or expiration, Carrier shall not solicit or accept traffic from any Customer where (1) the availability of such traffic or such Customer first became known to Carrier as a result of Broker's efforts, or (2) where such traffic or such Customer was first tendered directly or indirectly, to the Carrier by Broker. Without limitation of the foregoing prohibition, if Carrier breaches this prohibition and obtains traffic from such customer, Broker then is entitled, for a period of 12 months after the involved traffic first begins to move, to a commission from the Carrier of twenty percent (20%) of the transportation revenue on the movement of the traffic. The provisions of this Section 10 shall survive any termination or expiration of this Agreement. The term "Customer" specifically includes, without limitation, Imperial Sugar. In the event Broker engages legal counsel to enforce this or any other provision of this Agreement, Carrier shall bear all fees and expenses of such counsel if Broker prevails in such claim.

(Doc. 10 at 4, § 10.)

The parties offer competing interpretations of the back-solicitation clause that focus on the meaning of the term "traffic," as modified by "first became known" and "first tendered."[1] In ruling

---

[1] Defendant Davis and its expert in his report and deposition frequently use the term "first made known" in place of "first became known." The Court will use only the term "first became known" because that is the language present in the back-solicitation clause.

on Davis's motion for judgment on the pleadings, the Court stated that the parties' arguments were based on two different meanings for the term "traffic," the Agreement does not define the term, and the parties did not cite any case law, regulation, or industry standard to supply a commonly understood meaning for it. The Court concluded as a matter of law that the term "traffic" as used in the Agreement was ambiguous because "[a]s a matter of plain language, both interpretations are plausible." See Mem. and Order of April 27, 2017, at 5-6 (Doc. 32) (Judge Carol E. Jackson, presiding).

Davis states it has disclosed Mr. Seaton as an expert witness to testify concerning transportation industry trade usage and custom of terms in connection with back-solicitation clauses in freight brokerage contracts. Mr. Seaton has more than forty years' experience as a freight broker, freight carrier, and transportation lawyer.

## II. Legal Standard

The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. In Daubert, the United States Supreme Court interpreted Rule 702 to require district courts to be certain that expert evidence based on scientific, technical or other specialized knowledge is "not only relevant, but reliable." Daubert, 509 U.S. at 589. The district court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id. at 592-93.

The Eighth Circuit Court of Appeals has stated that proposed expert testimony must meet three criteria to be admissible under Rule 702. "First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy." Lauzon v. Senco Prods., Inc., 270 F.3d 681, 686 (8th Cir.

2001). "Second, the proposed witness must be qualified to assist the finder of fact." Id. (citation omitted). "Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." Id. (internal quotation marks omitted). To meet the third requirement, the testimony must be "based on sufficient facts or data" and be "the product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

"Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony[,]" Weisgram v. Marley Co., 169 F.3d 514, 523 (8th Cir. 1999), and "favors admissibility if the testimony will assist the trier of fact." Clark ex rel. Clark v. Heidrick, 150 F.3d 912, 915 (8th Cir. 1998). Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." Id. (citation and internal quotation omitted).

Under Rule 702, the trial court has gatekeeping responsibility to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (citing Daubert, 509 U.S. at 597). "When making the reliability and relevancy determinations, a district court may consider: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community." Russell v. Whirlpool Corp., 702 F.3d 450, 457 (8th Cir. 2012) (citing Daubert, 509 U.S. at 593-94). "This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject Daubert factors as the particular case demands." Unrein v. Timesavers, Inc., 394 F.3d 1008, 1011 (8th Cir. 2005). "There is no single requirement

for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." Id.

As a general rule "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Nebraska Plastics, Inc. v. Holland Colors Am., Inc., 408 F.3d 410, 416 (8th Cir. 2005) (quoted case omitted). However, "if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded." Id. (quoted case omitted). An expert opinion is fundamentally unsupported when it "fails to consider the relevant facts of the case." Id.

## III. Discussion

Hogan asserts that Mr. Seaton's opinions are inadmissible under Rule 702 and Daubert. It does not challenge Mr. Seaton's qualifications to testify, or argue that his testimony would not be relevant or helpful to the fact-finder. Hogan argues that Mr. Seaton's testimony must be excluded because it (1) usurps the Court's function by offering legal conclusions about the meaning of the Agreement's back-solicitation clause; (2) usurps the jury's function by opining on what the parties intended in a July 15, 2009 email exchange; (3) usurps the Court's and the jury's functions by applying his interpretation of the back-solicitation clause to the facts of the case and concluding that Davis did not breach the Agreement and was incapable of breaching it; and (4) offers inadmissible opinions on the meanings of the terms "traffic," "first tendered," and "first became known," because Mr. Seaton admitted these terms do not have an accepted meaning in the industry.

Davis responds that Mr. Seaton does not offer legal conclusions or opinions. Davis states that Mr. Seaton offers admissible opinions, based on his extensive, specialized knowledge and experience, concerning industry custom and usage of terms as used in the Agreement's back-

solicitation clause. Davis notes that the Court previously determined the back-solicitation clause was ambiguous, and asserts that Mr. Seaton's testimony is relevant and helpful to a jury because the specialized transportation terms on which he opines are not common knowledge.

As a general principle, "expert testimony on legal matters is not admissible." Southern Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc., 320 F.3d 838, 841 (8th Cir. 2003). "[C]onstruction of the terms and conditions of written contracts, including insurance policies, is an issue of law for the trial court to determine, not matters of fact insertable into the trial record through the Federal Rules of Evidence." Weitz Co., LLC v. Lexington Ins. Co., 786 F.3d 641, 646 (8th Cir. 2015) (applying Illinois, Iowa, and Florida law) (citing National Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003) ("The [c]onstruction of an insurance policy—the process of determining its legal effect—is a question of law for the court.") (alteration in original) (quotation omitted)).

Here, the parties agree that pursuant to the Agreement's "governing law" provision, Missouri law applies to Hogan's breach of contract claim. "Under Missouri law, determining the meaning of an unambiguous provision is a question of law for the court, determined by giving language its plain and ordinary meaning without resort to extrinsic evidence." Weitz Co. v. MH Washington, 631 F.3d 510, 524 (8th Cir. 2011). "A contract is ambiguous when the terms are susceptible of more than one reasonable meaning." Id. "Interpretation of a contract is a jury question only when the court determines that the contract is ambiguous and that there exists a genuine factual dispute regarding the intent of the parties." Id. "Where a contract is ambiguous and unclear, . . . 'a court may resort to extrinsic evidence to resolve an ambiguity.'" Lafarge N. Am., Inc. v. Discovery Grp. L.L.C., 574 F.3d 973, 979 (8th Cir. 2009) (quoting Burrus v. HBE Corp., 211 S.W.3d 613, 616 (Mo. Ct. App. 2006)).

Here, the Court has determined that the term "traffic" as used in the Agreement's back-solicitation clause is ambiguous. (See Doc. 32 at 5.) As a result of the ambiguity, a question of fact arises as to the parties' intent, and the issue is reserved for the jury. Lafarge, 574 F.3d at 981 & n.3 (citing Burrus, 211 S.W.3d at 616).

To aid in determining the parties' intent, "industry practice or standards may often be relevant . . . , and expert or fact testimony on what these are is often admissible." Southern Pine Helicopters, 320 F.3d at 841. The Eighth Circuit has approved the admission of expert testimony to define terms of art contained in contracts. "Courts have frequently recognized the value of expert testimony defining terms of a technical nature and testifying as to whether such terms have acquired a well-recognized meaning in the business or industry." Nucor Corp. v. Nebraska Public Power Dist., 891 F.2d 1343, 1350 (8th Cir. 1989) (no error in admitting expert testimony on the meaning of terms "fair," "reasonable," and "non-discriminatory" in the electrical power industry, as contained in the parties' contract); see also Kona Tech. Corp. v. S. Pac. Transp. Co., 225 F.3d 595, 611 (5th Cir. 2000) (expert testimony properly admitted to interpret contract provisions having a specialized meaning in the railroad industry); WH Smith Hotel Servs., Inc. v. Wendy's Int'l Inc., 25 F.3d 422, 429 (7th Cir. 1994) (no error to admit expert testimony concerning customary and usual meaning of rent provisions in the commercial real estate industry).

Here, the Court finds that an expert's testimony on the custom and usage of terms in the transportation industry would assist the jury in determining an ultimate issue of fact in this case.[2] Transportation industry terms are not common knowledge. The Court has found the term "traffic"

---

[2]The jury will be instructed to make a fact finding as to the meaning of the term "traffic" as used in the Agreement's back-solicitation clause and also, if appropriate, "first became known" and "first tendered." Cf. Alliance 3PL Corp. v. New Prime, Inc., 614 F.3d 703, 705 (7th Cir. 2010).

contained in the back-solicitation clause ambiguous on a plain-language reading because it is susceptible to two reasonable interpretations, and it appears to be of a sufficiently technical nature that it may be a term of art in the transportation industry. On summary judgment, the parties also present conflicting extrinsic evidence of the meaning of the terms "first became known" and "first tendered," both of which modify the term "traffic" in the back-solicitation clause.

Hogan asserts that Mr. Seaton's testimony is "rife with inappropriate legal conclusions that go far beyond the permissible scope of custom and usage testimony." Mem. Supp. Mot. to Exclude at 10. Hogan argues that the following opinions must be excluded because they address the legal interpretation of the Agreement, not the fact question of what terms such as "traffic," "first became known," and "first tendered" as used in the Agreement mean in the transportation industry:

• Traffic prohibited under Section 10 is limited to new business first made known or first tendered the carrier by Hogan. (Seaton Rep. ¶ 10);

• [T]he inclusion of the terms "first made known" and "first tendered" keeps a carrier from taking advantage of the broker's efforts to find unknown freight business or traffic for the carrier's benefit by back soliciting the broker and inducing the shipper, Imperial Sugar in this case, to abandon the broker based upon cheaper rates. That is not the case here. (Id. ¶ 11);

• As a result, Hogan had no proprietary interest in the services which Davis subsequently provided to Imperial through Hogan at Imperial's direction. (Id.); and

• [I]n my opinion, the anti-back solicitation provision language in Paragraph 10 as understood in the transportation industry would create an exception for the Davis-Imperial freight business relationship prior to Imperial Sugar's decision to use Hogan as Imperial' exclusive logistics agent. (Id.).

Mem. Supp. Mot. to Exclude at 10.

The Court, after careful consideration, determines that these opinions are properly excluded. Each of the opinions quoted above takes the Mr. Seaton's definitions of terms in the parties' Agreement and applies those definitions to the facts of the case to interpret the meaning of the

Agreement. Although an expert may testify as to ultimate issues of fact, Mr. Seaton's opinions invade the province of the jury because they interpret the Agreement and offer precisely the conclusions Davis asks the jury to reach, essentially opining on the Agreement's legal effect.

Hogan also asserts that Mr. Seaton's opinions as to the meaning of the terms "traffic," "first became known," and "first tendered" must be excluded because Mr. Seaton admitted in his deposition that the terms do not have an accepted meaning in the transportation industry. See Hogan Ex. H (Seaton Dep. 65:4-25) (discussing the term "traffic"). "[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Nebraska Plastics, 408 F.3d at 416 (quoted case omitted). Hogan's assertion is a matter for cross-examination and the presentation of contrary evidence, not exclusion of the testimony.

Mr. Seaton will be permitted to define the terms "traffic," "first became known," and "first tendered," and testify as to whether those terms have acquired a well-recognized meaning in the transportation industry. This testimony will assist the jury in making ultimate findings of fact.[3]

## IV. Conclusion

For the foregoing reasons, plaintiff Hogan's Daubert motion to exclude the opinions and testimony of defendant Davis's expert witness Henry Seaton will be denied as to testimony defining the terms "traffic," "first became known," and "first tendered," and testimony as to whether those

---

[3]In offering Mr. Seaton's testimony at trial, Davis must be careful to phrase its questions to elicit only the witness's definitions of what the terms "traffic," "first became known," and "first tendered" mean in transportation industry custom and usage, and to avoid any testimony as to interpretation of the Agreement's meaning or effect. The Court will discuss this more fully with the parties at the final pretrial conference.

terms have acquired a well-recognized meaning in the transportation industry. The motion will be granted in all other respects.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Hogan Logistics, Inc.'s motion to exclude the expert testimony of Davis Transfer Company, Inc.'s expert, Henry Seaton, is **GRANTED in part** and **DENIED in part**; the motion is **DENIED** as to Mr. Seaton's testimony defining the terms "traffic," "first became known," and "first tendered," and testimony as to whether those terms have acquired a well-recognized meaning in the transportation or industry; and is **GRANTED** in all other respects. [Doc. 52]

*/s/ Charles A. Shaw*
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  9th  day of January, 2018.