UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HOGAN LOGISTICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-1541 CAS |
| | ) | |
| DAVIS TRANSFER COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This diversity matter is before the Court on defendant Davis Transfer Company, Inc.'s ("Davis") motion for summary judgment. Plaintiff Hogan Logistics, Inc. ("Hogan") opposes the motion and it is fully briefed and ready for decision. Hogan filed suit against Davis in state court asserting claims for breach of contract (Count I), breach of the implied duty of good faith and fair dealing (Count II), and tortious interference (Count III). Davis removed the case to this Court based on diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a). Following removal, Hogan filed an Amended Complaint (Doc. 39) and later dismissed its claims in Counts II and III without prejudice (Doc. 75). Only the breach of contract claim in Count I remains pending. For the following reasons, Davis's motion for summary judgment will be denied.

**I. Legal Standard**

The Eighth Circuit has articulated the appropriate standard for consideration of motions for summary judgment as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence

of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal citations and quotation marks omitted).

**II. Facts**

Plaintiff Hogan is a freight broker and third-party logistics company that provides nationwide shipping services for its customers, which at one time included Imperial Sugar Company ("ISC"). Hogan contracts with motor freight carriers, such as defendant Davis, to complete the actual transport of its customers' goods.

Prior to July 2009, ISC hired Davis and others to transport cargo from its Port Wentworth and Savannah, Georgia warehouses. Davis hauled more than 1,900 ISC shipments in ISC's 2008 fiscal year. In 2009, ISC discontinued its direct employment of motor carriers, and instead decided to contract with Hogan to arrange for all motor carrier transportation of cargo from its Port Wentworth and Savannah warehouses. ISC suggested that Davis bid for the transportation business to be brokered exclusively by Hogan, and Hogan subsequently awarded Davis ISC's cargo shipments to destinations in several southern statutes. Davis had previously hauled ISC's cargo to each of these destinations.

2

In conjunction with the award of the ISC business in 2009, Hogan sent Davis and other carriers its standard Broker-Carrier Agreement, which included a Traffic Solicitation clause at paragraph 10. The parties refer to the Traffic Solicitation clause as a "back-solicitation" clause. On July 15, 2009, Hogan's Director of Logistics, Ben Strickler, sent all carriers an email advising that it had revised the Broker-Carrier Agreement, including by revising the terms of the back-solicitation clause, and informed them they must sign and submit the revised updated version by July 20, 2009.

Davis's president Todd Davis replied to Strickler's email, inquiring about the back-solicitation clause:

> On the back solicitation part; as we were a carrier for Imperial prior to our relationship, if they ever decided to switch from Hogan, would this affect our ability to do business? I know this is a bit technical, but it is probably something we would need to clarify. I am sure Hogan would do the same if you all were in our position.

Strickler responded:

> My understanding of the back solicitation involved customers we are currently doing business with. If they moved on from Hogan they wouldn't be a current customer[.]

Davis replied:

> Ok, if we can just get this clarified, obviously a company the size of Hogan and/or Davis we would have mutual customers and would see new customers, but I would never solicit a customer where I am doing business. Imperial is a bit different since we were a customer of Imperial prior to being a customer of Hogan.
>
> Also on the [I]mperial business we need to make sure that it is noted that we were a customer of Imperial prior to being a customer of Hogan so we are never in a situation where there would be a back sale if Imperial decided to call me about doing business.
>
> Can we get something drawn up on this?

Strickler responded:

> Additional revisions are not being entertained. You have already signed the original, and this one is more in your favor. You shouldn't have any issues. Also, when

3

reading it you'll see 1) the availability of such traffic or such Customer FIRST became known to Carrier as a result of Broker's efforts, or 2) where such traffic or such Customer was FIRST tendered, directly or indirectly, to the Carrier by broker.

Ex. 5 to Def.'s Statement of Undisputed Material Facts (capitalization in original). No further emails were exchanged and Hogan signed the revised agreement.

The parties entered into another Broker-Carrier Agreement (the "Agreement") on October 1, 2013, which was substantively the same as the 2009 agreement and also contained a Traffic Solicitation clause at paragraph 10. This is the Agreement at issue in this case. On April 1, 2014, the parties executed an ISC Rate Addendum agreement.

The Traffic Solicitation clause provides:

**10. TRAFFIC SOLICITATION**

During the term of this Agreement and for a period of 12 months after termination or expiration, Carrier shall not solicit or accept <u>traffic</u> from any Customer where (1) the availability of such traffic or such Customer <u>first became known</u> to Carrier as a result of Broker's efforts, or (2) where such traffic or such Customer was <u>first tendered</u> directly or indirectly, to the Carrier by Broker. Without limitation of the foregoing prohibition, if Carrier breaches this prohibition and obtains traffic from such customer, Broker then is entitled, for a period of 12 months after the involved traffic first begins to move, to a commission from the Carrier of twenty percent (20%) of the transportation revenue on the movement of the traffic. The provisions of this Section 10 shall survive any termination or expiration of this Agreement. The term "Customer" specifically includes, without limitation, Imperial Sugar. In the event Broker engages legal counsel to enforce this or any other provision of this Agreement, Carrier shall bear all fees and expenses of such counsel if Broker prevails in such claim.

(Doc. 10 at 4, § 10) (emphasis added).

The meaning of the back-solicitation clause is central to the parties' dispute. Hogan contends the back-solicitation clause prohibits Davis from soliciting or accepting any freight traffic from Hogan's customers directly. Hogan asserts that in May 2016, Davis wrongfully solicited freight traffic from ISC in violation of the Agreement's back-solicitation clause. As a result, Hogan

4

lost the portion of ISC's freight traffic that Davis previously carried on Hogan's behalf, and Davis carried freight directly for ISC rather than as a contract carrier for Hogan.

Hogan contends that the term "traffic" as used in the back-solicitation clause means an individual shipment, or individual shipment requests on a day-to-day basis with varying assignments. Hogan asserts that the terms "first became known" and "first tendered" in the back-solicitation clause, when used in reference to "traffic," mean the yearly traffic needs of a customer, and not simply business of a customer, as customers' freight needs–and thus traffic–are fluid and vary substantially from year to year in many particulars.

Davis contends that because it hauled freight for ISC prior to entering into the Agreement with Hogan, the language of the back-solicitation clause did not preclude it from contracting directly with ISC after ISC discontinued using Hogan as its exclusive freight broker, because ISC's traffic was not first made known to it or first tendered to it by Hogan. In support, Davis points to Mr. Strickler's explanation of the back-solicitation clause in the 2009 email exchange with Todd Davis quoted above, as meaning the clause would not apply to Davis if ISC later wanted to resume doing business with Davis directly, because as to Davis, Hogan did not first introduce ISC as a customer, did not first tender ISC freight, and did not first make known the availability of ISC's transportation business.

Davis asserts that the term "traffic" as used in the back-solicitation clause and the transportation industry means "business from a transportation customer," and that the terms first became known and first tendered used in conjunction with traffic keep a carrier from taking advantage of the broker's efforts to find previously unknown freight business or traffic and induce

5

the shipper to abandon the broker for the carrier's cheaper rates. Davis also supports its definitions of these terms with expert testimony as to industry custom and usage.

**III. Discussion**

In a diversity action such as this, state law governs the rules for construing contractual agreements. Orion Fin. Corp. of S. Dak. v. American Foods Group, Inc., 281 F.3d 733, 738 (8th Cir. 2002). The parties agree that Missouri law governs. In determining the scope of Missouri law, this Court is bound by the decisions of the Supreme Court of Missouri. Taylor v. St. Louis County Bd. of Election Comm'rs, 625 F.3d 1025, 1027 (8th Cir. 2010). Decisions from the Missouri Court of Appeals are also relevant, and "must be followed when they are the best evidence of Missouri law." Id. at 1028, n.2 (quoted case omitted).

Under Missouri law, the essential elements of a breach of contract action are: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." Keveney v. Missouri Military Acad., 304 S.W.3d 98, 104 (Mo. 2010) (en banc).

    A. Prior Material Breach by Plaintiff Hogan

Davis moves for summary judgment on the basis that Hogan first materially breached the parties' Agreement and therefore cannot enforce it as a matter of law, citing Forms Manufacturing, Inc. v. Edwards, 705 S.W.2d 67, 69 (Mo. Ct. App. 1985) ("a party to a contract cannot claims its benefits where he is the first to violate it."). Davis asserts that by January 1, 2016, Hogan could not honor its contractual commitment to Davis by tendering five loads of ISC cargo to Davis each day, because ISC declined to renew its five-loads-per-day Committed Capacity Agreement with Hogan.

6

Davis contends the failure to tender five load each day was a material contract breach that prevents Hogan from enforcing the Agreement against Davis, including the back-solicitation clause.

Hogan responds that Davis's prior material breach defense is an affirmative defense that it failed to plead and thus has waived. On the merits, Hogan responds that Davis has not established the contractual obligation it claims Hogan breached. Hogan asserts that the parties' Rate Addendum –the basis for the first-to-breach defense–commits Davis to provide "committed capacity of 5 trucks per day" but does not commit Hogan to provide a minimum number of loads per day, and Hogan did not guarantee it would provide a minimum number. Hogan argues that because the Rate Addendum did not create such an obligation, it could not have breached the Agreement.

The Court must first determine whether the prior material breach is an affirmative defense, and whether Davis has waived it. Rule 8(c)(1) requires that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including" but not limited to eighteen specified matters. Rule 8(c)(1), Fed. R. Civ. P. Davis did not plead prior material breach as a defense in its Answer to either Hogan's original Petition or First Amended Complaint. Davis asserts that such pleading was not required because the Amended Complaint pleads that Hogan fully performed and did not first breach the Agreement, and Davis specifically denied that allegation in its Answer.[1] Davis argues that the issue of Hogan's prior breach of the Agreement was within the issues Hogan framed in its pleadings, and that Davis raises the defense to show Hogan cannot make a prima facie case, not that the Agreement should be avoided. Davis also asserts that Hogan took written and oral discovery from it on Hogan's failure to perform the Agreement.

---

[1] The Amended Complaint alleges in pertinent part: "Hogan performed its obligations under the Agreement and satisfied any and all conditions precedent necessary to bring and succeed on its claims here." (Doc. 39, ¶ 42.)

7

Davis also asserts that its affirmative defenses as pleaded already encompass Hogan's failure of contract performance. Davis points to its seventh affirmative defense ("The sole proximate cause of any losses sustained by Plaintiff was the conduct of Plaintiff and/or others, individually or collectively), and tenth affirmative defense ("Plaintiff's claims are barred by the doctrine of unjust enrichment.") Answer to Am. Compl. at 8 (Doc. 40). Finally, in a footnote to its reply memorandum, Davis requests leave to replead its defenses in the event the Court determines the prior material breach should have been pleaded as an affirmative defense.

Because this is a diversity case, the Court applies federal procedural law and state substantive law to determine whether the prior material breach defense must be pleaded under Rule 8(c)(1). See 2 James Wm. Moore, et al., Moore's Federal Practice §8.08[4] (3d ed. 2016); First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd., 477 F.3d 616, 621-22 (8th Cir. 2006) ("Pictet") ("whether Connecticut statute provided affirmative defense was question of state law; whether affirmative defense was waived because of failure to plead was governed by Fed. R. Civ. P. 8(c)").)

Under Missouri law, the general rule is that "[m]atters seeking avoidance of a valid contract are affirmative defenses which must be set out in the pleadings." Semo Grain Co. v. Oliver Farms, Inc., 530 S.W.2d 256, 258 (Mo. Ct. App. 1975). Not all defenses to contract claims are avoidances, though: "[A] defendant's general denial place[s] in issue all material allegations contained in plaintiff's petition necessary to support plaintiff's claim, and the defendant [i]s entitled to prove any fact which tend[s] to show plaintiff's cause of action never had any legal existence." Id. (cited case omitted). "However, where the defendant intends to rest his defense upon some fact not included in the allegations necessary to support the plaintiff's case then he must plead the same specially or

affirmatively in his answer as a condition to the admissibility of such evidence at the trial." Id. (internal punctuation and quoted case omitted).

Consequently, Davis is entitled to raise prior material breach as a defense to Hogan's prima facie case without the need to affirmatively plead it only if the Rate Addendum on which the defense is based in part of the "material allegations contained in plaintiff's petition necessary to support plaintiff's claim." See id. The question presented is a close one. It is relevant that the Rate Addendum is a separate document from the Agreement, and is not specifically mentioned in either the Petition or the Amended Complaint, both of which assert a breach of contract claim based on the Agreement's back-solicitation clause. The Rate Addendum was not entered into by the parties until April 1, 2014, six months after the Agreement was signed.[2] In addition, on its face, the Rate Addendum does not appear to obligate Hogan to commit to a minimum number of loads per day. These facts weigh against a finding that Hogan's material allegations pleaded in the Amended Complaint concerning the Agreement necessarily include the terms of the Rate Addendum.

After careful consideration of the parties' pleadings and relevant Missouri precedent, the Court concludes that Davis's prior material breach defense based on the Rate Addendum is not within the issues Hogan framed in its complaint, but instead is based on "some fact not included in the allegations necessary to support [Hogan's] case." Semo Grain, 530 S.W.2d at 258. The Court also concludes the prior material breach defense is not encompassed by Davis's pleaded affirmative defenses, and therefore must be affirmatively pleaded.

---

[2] See Rate Addendum, Davis Ex. 12 (Doc. 57-12); Broker-Carrier Agreement, Davis Ex. 7 (Doc. 57-7).

The Court now considers the effect of Davis's failure to affirmatively plead the prior material breach defense. "Generally, failure to plead an affirmative defense results in a waiver of that defense." Pictet, 477 F.3d at 622 (citing Fed. R. Civ. P. 8(c); Jacobs Mfg. Co. v. Sam Brown Co., 19 F.3d 1259, 1266 (8th Cir. 1994) (applying Missouri law)). Because "[t]he Supreme Court has indicated that the Rule 8(c) pleading requirement is intended to give the opposing party both notice of the affirmative defense and an opportunity to rebut it," id., the Eighth Circuit "eschew[s] a literal interpretation of the Rule that places form over substance" and instead holds that technical failure to comply with Rule 8(c) is not an absolute bar, and can be excused when "an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise[.]" Pictet, 477 F.3d at 622 (internal punctuation and citations omitted). The Eighth Circuit has approved the allowance of affirmative defenses first raised at various stages of litigation. See, e.g., Sanders v. Dep't of the Army, 981 F.2d 990, 991 (8th Cir. 1992) (per curiam) (no abuse of discretion to allow an affirmative defense to be raised for the first time in a motion to dismiss); Stoebner v. Parry, Murray, Ward & Moxley, 91 F.3d 1091, 1093-94 (8th Cir. 1996) (per curiam) (favorably citing a Ninth Circuit decision that allowed an affirmative defense to be raised for the first time in a summary judgment motion where there was no prejudice).

The Court finds there would be no unfair surprise or prejudice to Hogan if Davis were allowed to amend its Answer to assert the prior material breach defense, as the summary judgment motion raising it was filed October 13, 2017, more than four months prior to the February 26, 2018 trial date, and Davis represents that Hogan took written and oral discovery from Davis concerning

Hogan's alleged failure to perform the Agreement.[3] Because the Case Management Order's deadline for amendment of pleadings passed in January 2017, however, the Court must consider not only Rule 8(c)'s standard, but the "good cause" standard of Rule 16(b). See Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 714-17 (8th Cir. 2008) (district court erred in granting motion for leave to amend and plead affirmative defense under Rule 8(c) where the time for amendment set by the scheduling order had passed; court was required to apply Rule 16(b)'s good cause standard).

Under Rule 16(b), prejudice to the nonmoving party resulting from modification of the scheduling order may be a factor in the analysis, but the moving party's diligence in meeting the scheduling order's deadlines is the first criterion, and courts "will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." Id. at 717. Davis's request for leave to amend its Answer as contained in a footnote in its reply does not attempt to establish good cause, and does not address Davis's diligence in complying with the Case Management Order's deadlines. On the record before it, the Court will not grant leave for Davis to amend its Answer or deem the pleading amended.

Because Davis's prior material breach defense was required to be affirmatively pleaded but was not, it is not properly before the Court. Davis's motion for summary judgment based on the defense will therefore be denied.

---

[3] Hogan sought leave to file a surreply to Davis's reply memorandum. The proposed surreply does not mention Davis's representation concerning discovery and the Court therefore accepts it as uncontested. The Court finds that Hogan's proposed surreply does not to respond to any new argument raised by Davis in its reply, but instead reopens argument on previously briefed issues. This is not the proper scope of a surreply. Hogan's motion for leave to file a surreply will be denied and the Court does not consider it.

B. The Agreement's Back-Solicitation Clause

Davis also moves for summary judgment on the basis that Hogan has failed to offer evidence to support its subjective interpretation of the disputed back-solicitation clause, and therefore fails to create a genuine issue of fact. Davis states it has presented evidence the parties intended to exclude ISC from the reach of the back-solicitation clause, offering (1) parol evidence of Hogan's intent as expressed in emails between Hogan's Director of Logistics, Ben Strickler, and Davis's owner and president, Todd Davis; and (2) industry expert testimony of Henry Seaton and Mr. Davis "clarifying the parties' intent using trade usage and custom." Mem. Supp. Mot. for Summ. J. at 10-11. Davis asserts that Hogan has not developed any substantive evidence to create a genuine issue of material fact concerning the back-solicitation clause's intent, as it offers only Mr. Strickler's subjective and conclusory interpretation of the clause, which Davis asserts is contrary to the intent expressed in Mr. Strickler's emails to Mr. Davis.

Hogan responds that Davis's proffered interpretation of the back-solicitation clause is unreasonable on its face and irreconcilable with the clause's plain terms, which specifically refers to ISC as a customer from whom Davis could not solicit freight. Hogan states it has offered Mr. Strickler's testimony as admissible custom and usage testimony that supports its interpretation of the clause, and asserts that its interpretation comports with the clause's language and the admitted, ordinary function such clauses serve in transportation agreements. Hogan also asserts that the parties' course of performance under the Agreement and its predecessor between 2009 and 2015 is inconsistent with Davis's interpretation.

In a contract case, summary judgment is appropriate "where the language of the agreement is so clear and unambiguous that the meaning of the portion in dispute is so apparent that it may be

12

ascertained from the four corners of the document." Board of Educ. of the City of St. Louis v. State of Missouri, 134 S.W.3d 689, 695 (Mo. Ct. App. 2004). In contrast, summary judgment is improper "where the disputed contract language is ambiguous and parol evidence is required to interpret the contract and the parties' intent." Zeiser v. Tajkarimi, 184 S.W.3d 128, 132 (Mo. Ct. App. 2006).

"Whether a contract is ambiguous is a question of law." Id. "To determine whether a contract is ambiguous, [courts] consider the instrument as a whole, giving the words contained therein their ordinary meaning." Deal v. Consumer Programs, Inc., 470 F.3d 1225, 1229 (8th Cir. 2006) (citing Young Dental Mfg. Co. v. Engineered Prods. Inc., 838 S.W.2d 154, 156 (Mo. Ct. App. 1992)). The parties may disagree about a contract's meaning without it being necessarily ambiguous. Id. (citing Sligo, Inc. v. Nevois, 84 F.3d 1014, 1019 (8th Cir. 1996)). An ambiguous contract is one that "is reasonably susceptible to different constructions." Lafarge N. Am., Inc. v. Discovery Group, L.L.C., 574 F.3d 973, 979 (8th Cir. 2009) (quoting Burrus v. HBE Corp., 211 S.W.3d 613, 616 (Mo. Ct. App. 2006)). "Where a contract is ambiguous and unclear, . . . 'a court may resort to extrinsic evidence to resolve an ambiguity.'" Id. (quoting Burrus, 211 S.W.3d at 616).

In ruling on Davis's motion for judgment on the pleadings, the Court held that the Agreement's back-solicitation clause was ambiguous as a matter of law. See Mem. and Order of April 27, 2017, at 6 (Doc. 32) (Judge Carol E. Jackson, presiding). In connection with the instant motion for summary judgment, the parties have submitted voluminous and conflicting extrinsic evidence to support their respective interpretations of the clause. The Court has carefully reviewed the parties' memoranda and supporting exhibits, and concludes for purposes of summary judgment that the back-solicitation clause is ambiguous, as it is "reasonably susceptible to different constructions." Burrus, 211 S.W.3d at 616).

13

"If a contract is ambiguous, 'then a question of fact arises as to the intent of the parties, and thus it is error to grant summary judgment.'" Lafarge, 574 F.3d at 979 (quoting Essex Dev., Inc. v. Cotton Custom Homes, L.L.C., 195 S.W.3d 532, 535 (Mo. Ct. App. 2006)). "In such a case, the intent of the parties as to the meaning of the contract is a genuine issue of material fact that should be resolved at trial." Mueller v. Farmers Ins. Co., 2009 WL 3275529, at *2 (E.D. Mo. Oct. 13, 2009) (citing Zeiser, 184 S.W.3d at 132-33).

Davis characterizes Hogan's extrinsic evidence as conclusory, subjective, and speculative, but does not cite any authority to establish that Mr. Strickler's testimony is not competent to establish trade usage or custom. In order to grant Davis's motion for summary judgment, the Court would have to engage in credibility determinations and weigh the evidence, which are jury functions. See Torgerson, 643 F.3d at 1043. As a result, Davis's motion for summary judgment premised on Hogan's alleged failure to provide evidence to support its interpretation of the Agreement's back-solicitation clause should be denied.

## IV. Conclusion

For the foregoing reasons, the Court concludes that defendant Davis Transfer Company, Inc.'s motion for summary judgment should be denied. Davis's prior material breach defense is not properly before the Court because it was not affirmatively pleaded, and genuine issues of material fact exist with respect to the parties' intent as to the meaning of the Agreement's back-solicitation clause.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Hogan Logistics, Inc.'s motion for leave to file a Sur-Reply and motion for leave to file Sur-Reply under seal are **DENIED**. [Docs. 76, 77]

**IT IS FURTHER ORDERED** that defendant Davis Transfer Company, Inc.'s Motion for Summary Judgment is **DENIED**. [Doc. 51]

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  9th  day of January, 2018.