# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| HOGAN LOGISTICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-1541 CAS |
| | ) | |
| DAVIS TRANSFER COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This closed diversity matter is before the Court on plaintiff Hogan Logistics, Inc.'s ("Hogan") Bill of Costs and Motion for Attorney's Fees, and defendant Davis Transfer Company, Inc.'s ("Davis") objections thereto. Both matters are fully briefed and ready for decision. For the following reasons, the Court will order costs taxed in favor of plaintiff and grant the motion for attorney's fees as set forth below.

## I. Background

This was an action for breach of contract. Plaintiff Hogan originally filed suit against Davis in state court, asserting a claim for breach of contract arising from a 2013 Broker-Carrier Agreement (the "Agreement") entered into between the parties. Davis removed the case to this Court based on diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a). The Court denied Davis's motion for judgment on the pleadings, finding in pertinent part that the disputed term "traffic" as contained in the Agreement's Traffic Solicitation Clause was ambiguous as a matter of law, as each party offered plausible interpretations of its meaning. Mem. and Order of Apr. 27, 2017 (Doc. 32 at 6) (J. Jackson). Hogan filed an Amended Complaint that added claims for breach of the implied

duty of good faith and fair dealing and tortious interference (Doc. 39), but later dismissed those claims leaving only the breach of contract claim in Count I (Doc. 75).

The Court denied defendant Davis's motion for summary judgment, concluding that the disputed Traffic Solicitation Clause was ambiguous, and therefore under Missouri law the parties' intent as to the meaning of the contract was a genuine issue of fact to be determined at trial. Mem. and Order of January 9, 2018 (Doc. 89 at 12-14).

Hogan's breach of contract claim was tried before a jury on February 26, 2018 through February 28, 2018, when the jury returned its verdict in favor of plaintiff Hogan in the amount of $48,846.67 (Doc. 140). The Court entered Judgment in favor of Hogan accordingly and awarded Hogan its costs (Doc. 141).

## II. Plaintiff Hogan's Bill of Costs

Hogan filed a Bill of Costs seeking the recovery of its taxable costs as a prevailing party. Hogan seeks total costs of $6,021.67, as follows:

| | | |
|---|---|---:|
| • | Fees of the clerk | $ 104.40 |
| • | Fees for service of summons and subpoena | 435.00 |
| • | Fees for transcripts | 5,242.27 |
| • | Fees for witnesses | 40.00 |
| • | Other costs (meeting room fee) | 200.00 |
| | TOTAL | $ 6,021.67 |

### A. Legal Standard

Hogan's request for its costs expended is governed by Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920. The Court must carefully scrutinize the claimed costs and the support offered for them. Farmer v. Arabian American Oil Co., 379 U.S. 227, 232-33, 235 (1964); Alexander v. National Farmers Org., 696 F.2d 1210, 1212 (8th Cir. 1982). "The party seeking to recover costs must fully establish the amount of compensable costs and expenses to which

it is entitled." ABT Sys., LLC v. Emerson Elec. Co., 2016 WL 5470198, at * (E.D. Mo. Sept. 29, 2016) (cited case omitted). The taxation of costs under Rule 54(d) is permissive, but in the Eighth Circuit there is a strong presumption the prevailing party is entitled to an award of costs. Thompson v. Wal Mart Stores, Inc., 472 F.3d 515, 517 (8th Cir. 2006). "As the losing party, [Davis] bears the burden of overcoming the presumption that [Hogan] is entitled to recover all costs allowed by § 1920." Stanley v. Cottrell, Inc., 784 F.3d 454, 464 (8th Cir. 2015).

Allowable costs in most cases are limited to the categories set forth in 28 U.S.C. § 1920, and expenses not on the statutory list must be borne by the party incurring them. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987); Brisco-Wade v. Carnahan, 297 F.3d 781, 782 (8th Cir. 2002). Taxable costs under § 1920 include: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts and interpreters under 28 U.S.C. § 1828. The Court will address each category of Hogan's claimed costs.

B. Discussion

1. *Fees of the Clerk*

Under 28 U.S.C. § 1920(1), Hogan seeks to recover Clerk's fees of $104.40 for the filing fee it paid when it filed this action in state court. The Eighth Circuit Court of Appeals has held, however, that "Section 1920 does not authorize the taxing of state court filing fees . . . in removal actions[.]" Pershern v. Fiatallis N. Am., Inc., 834 F.2d 136, 140 (8th Cir. 1987). The Court is of course bound by this precedent and therefore will not tax this item of cost, but will address below

whether Hogan can recover the state court filing fee pursuant to the attorneys' fees provision in the parties' Agreement.

### 2. Fees for Service of Summons and Subpoena

Hogan seeks reimbursement of private process server fees for issuance of summons and subpoenas in the amount of $435.00 under 28 U.S.C. § 1920(1). The Eighth Circuit has held that § 1920 contains no provision for use of a private process server and only allows taxation of service fees by the United States Marshal. See Crues v. KFC Corp., 768 F.2d 230, 234 (8th Cir. 1985). The Court is bound to follow this precedent. See Marez v. Saint-Gobain Containers, Inc., 2011 WL 1930706, at *15 (E.D. Mo. May 18, 2011); see also Bunda v. Potter, 2006 WL 2665134, at **3-6 (N.D. Iowa Jan. 31, 2006) (discussing Crues in depth; concluding that "while other courts have permitted the recovery of special process fees, this court is compelled to follow Eighth Circuit precedent regardless of the equities at play in the facts of this case."). The Court will not tax the private process server fees as a cost but will address below whether Hogan can recover these fees pursuant to the attorneys' fees provision in the parties' Agreement.

### 3. Fees for Transcripts Necessarily Obtained for Use in the Case

Hogan seeks reimbursement of $5,242.27 for court reporter/transcript fees for seven depositions. Davis objects to (a) a $369.60 charge invoiced August 15, 2017, for an expedited rough ASCII copy of Benjamin Strickler's deposition; (b) charges of $275.00 and $150.00 invoiced August 28, 2017, for video of Katherlin Wall's deposition; (c) a $232.72 charge invoiced October 17, 2017, for expedited delivery of Henry Seaton's deposition transcript; and (d) charges of $225.00 and $62.50 invoiced November 6, 2017 for the video of Rick Fenner's deposition. Davis does not offer any argument or authority in support of its cursory objections.

(a) <u>Expedited Rough ASCII Copy</u>

Hogan states that Davis first ordered an expedited copy of Benjamin Strickler's deposition which caused Hogan to order it as well, and asserts that under these circumstances the cost is fairly taxable to Davis, citing <u>Buehrle v. City of O'Fallon</u>, 2012 WL 579473, at *3 (E.D. Mo. Feb. 22, 2012).

This Court has allowed the cost of expedited transcripts in some cases and denied it in others, based on evidence offered as to why expedited transcripts were reasonable and necessary under the circumstances of each case. <u>See</u>, <u>e.g.</u>, <u>American Auto Ins. Co. v. Omega Flex, Inc.</u>, 2014 WL 980398, at *4-5 (E.D. Mo. Mar. 12, 2014) (allowing cost of expedited transcript of hearing on summary judgment and <u>Daubert</u> motions as reasonable and necessary because of short period of time between the ruling on the motions and the deadline for filing motions in limine); <u>but</u> <u>see</u> <u>ABT Sys.</u>, 2016 WL 5470198, at *3 (denying expedited transcripts where prevailing party failed to show they were necessary and failed to demonstrate it could not have scheduled the depositions in question earlier to avoid having so many shortly before dispositive motion deadline); and <u>U.S. Ring Binder, L.P. v. Staples Office Superstore, LLC</u>, 2010 WL 2010443, at *2 (E.D. Mo. May 19, 2010) (disallowing cost of two-day rush expedited transcript where prevailing party failed to adequately explain why witness's failure to answer questions during his deposition necessitated the rush transcript to meet deadline for motions to compel nine days later). In the <u>Buehrle</u> case, cited by Hogan, the Court allowed a prevailing defendant to recover the costs of expedited deposition transcripts where only the plaintiff had requested the expedited transcripts, and they were paid for by the defendant. 2012 WL 579473, at *3.

Here, Hogan provides no information from which the Court can determine whether the expedited Strickler transcript was reasonable and necessary in the circumstances of this case. The

mere fact that defendant Davis ordered an expedited transcript does not automatically make it reasonable and necessary for Hogan to do so. The Court has no information as to why either party found it appropriate to order an expedited transcript. Unlike the Buehrle case, Hogan did not pay for an expedited transcript only ordered by Davis, so Buehrle does not support a finding of reasonableness here. The Court will disallow the $369.60 cost of the expedited rough ASCII transcript of Mr. Strickler's deposition but will address below whether Hogan can recover the transcript fee pursuant to the attorneys' fees provision in the parties' Agreement.[1]

(b) Video Deposition Costs

Defendant Davis objects to charges of $275.00 and $150.00 for video recording of Hogan's witness Katherlin Wall's deposition in Savannah, Georgia, and charges of $225.00 and $62.50 for video recording of Hogan's witness Rick Fenner's deposition in Houston, Texas. Wall and Fenner are Hogan's current and former logistics coordinators. The video deposition charges were in addition to charges for printed transcripts. Hogan played the two video depositions at trial, and these witnesses' testimony helped it obtain a favorable verdict. Neither video had text running across the bottom of the screen, and neither was synched to a transcript. Hogan asserts it was necessary for it to also obtain printed transcripts of the depositions in order to comply with the Case Management Order's requirements concerning deposition designations, as it had to cite page and line numbers.

The Eighth Circuit has held that "§ 1920(2) permits taxation of costs for both printed and electronically recorded transcripts of the same deposition as long as each transcript is necessarily obtained for use in a case." Stanley, 784 F.3d at 467. The Eighth Circuit observed that there are many circumstances where both printed and electronically recorded transcripts of the same

---

[1]The Court will tax in plaintiff's favor the other costs associated with Mr. Strickler's deposition, in the amount of $302.30.

deposition can satisfy the statute's "necessarily obtained for use in the case" requirement. <u>Id.</u> at 466. For example, both printed and video depositions may be necessarily obtained for use in the case where "parties may capture depositions electronically in a large and complex patent case for use in trial while also retaining written transcripts for purposes of filing copies with the court," and where "[a]ttorneys may . . . be called upon to edit objectionable portions of electronically recorded testimony, or to supply an opposing party with a transcript to obtain a video or audio recorded deposition." <u>Id.</u> (citing cases).

The Court finds under the circumstances of this case that Hogan has established both printed and electronic transcripts of the same depositions were "necessarily obtained for use in the case" for the reasons it asserts, thus satisfying the statute's requirement. These costs will be taxed.

(c) <u>Expedited Delivery Charge</u>

Defendant Davis objects to a $232.72 charge for expedited delivery of Henry Seaton's expert deposition transcript. Hogan asserts it had a real need to promptly obtain the transcript of Mr. Seaton as it took his deposition on September 22, 2017, but had not received the transcript by October 4, 2017, twelve days later, and had to order an expedited transcript to meet the Case Management Order's October 13, 2017 deadline for <u>Daubert</u> motions. In the Court's experience, while it is not unheard of for a court reporting service to take twelve days or more to deliver a standard transcript, generally such a transcript will be delivered within about seven to twelve days. The Court notes that the parties jointly sought modification of the CMO in September 2017, in part because Hogan had not yet been able to take the deposition of Mr. Seaton, who resides in Nashville, Tennessee. <u>See</u> Jt. Mot. to Modify Amended CMO (Doc. 48, ¶ 7). Hogan filed a <u>Daubert</u> motion concerning Mr. Seaton's testimony on October 13, 2017. Under these circumstances, the Court

finds Hogan has established that an expedited transcript of Mr. Seaton's testimony was reasonable and necessary for use in the case. This cost will be taxed.

### 4. Fees for Witness

Hogan incurred a $40 statutory witness fee for deponent Katherlin Wall. This cost is allowable under 28 U.S.C. § 1920(3) and 28 U.S.C. § 1821, and will be taxed.

### 5. Cost of Hotel Meeting Room for Depositions

Hogan seeks costs of $200.00 for fees incurred in the rental of a hotel meeting room for the depositions of two witnesses, Todd Davis and Jeremy Garrison. Davis objects to this item of cost as not allowable under § 1920. The Court has recently held that fees incurred in the rental of a hotel conference room to host depositions are not recoverable under § 1920(3). Gierer v. Rehab Medical, Inc., 2018 WL 1397532, at *3-4 (E.D. Mo. Mar. 20, 2018). Hogan cites two decisions from this Court that it states allowed such costs under § 1920, Franklin v. Pinnacle Entertainment, Inc., 2014 WL 1356126, at *3 (E.D. Mo. Apr. 7, 2014); and Burton v. St. Louis Board of Police Commissioners, 2012 WL 5392500, at *1 (E.D. Mo. Nov. 5, 2012). The cases are distinguishable from the instant case, however, because in Franklin and Burton the court reporting service charged for the use of video conference rooms for video depositions, and the Court determined the cost was taxable as a fee of the court reporter under § 1920(2). Here, the depositions at issue were not video depositions, and the room rental fee was not imposed by the court reporting service.

The Court concludes the room rental fee is not a recoverable cost under § 1920 and it will not be taxed, but will address below whether Hogan can recover the fee pursuant to the attorneys' fees provision in the parties' Agreement.

C.  Conclusion

For the foregoing reasons, the Court will grant in part and disallow in part plaintiff Hogan's

Bill of Costs, and will order costs taxed in its favor in the amount of $4,912.67, as follows:

- •  Fees for transcripts                        4,872.67
- •  Fees for witnesses                           40.00
-       TOTAL                                <u>$ 4,912.67</u>

.

## III.  Plaintiff Hogan's Motion for Attorney's Fees and Expenses

The Court now turns to Hogan's motion for contractual attorney's fees and expenses under

the terms of the 2013 Broker-Carrier Agreement.  Hogan seeks $254,553.50 in attorney's fees and

$10,425.95 in expenses.  The motion is supported by the affidavit of attorney Dale Weppner; a

ninety-page itemized billing record from the law firm Greensfelder, Hemker & Gale, P.C.; an

itemized report of expenses incurred; 2017 Missouri billing rate information as published in the

<u>Missouri Lawyers Weekly</u> newspaper; Defendant's First Request for Production of Documents

Directed to Plaintiff; and Defendant's Rule 30(b)(6) Second Amended Notice of Deposition to

Hogan Logistics, Inc.

Defendant Davis opposes the motion for attorney's fees on the grounds that (1) Hogan did

not reduce its claimed attorney's fees for its voluntarily dismissed claims in Counts II and III, though

the parties' Stipulation for Dismissal of those claims required the parties to bear their own fees and

expenses related to the claims; (2) Hogan overstaffed the case by using two lawyers for pretrial

proceedings and at trial, even though it knew its breach of contract claim was worth slightly less

than $50,000; and (3) the amount of attorney's fees and expenses claimed is disproportionate to the

judgment amount.

A.  The Contractual Provision

The Traffic Solicitation Clause in the parties' 2013 Broker-Carrier Agreement includes the following language regarding attorney's fees and expenses:

**10. TRAFFIC SOLICITATION**

During the term of this Agreement and for a period of 12 months after termination or expiration, Carrier shall not solicit or accept traffic from any Customer where (1) the availability of such traffic or such Customer first became known to Carrier as a result of Broker's efforts, or (2) where such traffic or such Customer was first tendered directly or indirectly, to the Carrier by Broker.  Without limitation of the foregoing prohibition, if Carrier breaches this prohibition and obtains traffic from such customer, Broker then is entitled, for a period of 12 months after the involved traffic first begins to move, to a commission from the Carrier of twenty percent (20%) of the transportation revenue on the movement of the traffic.  The provisions of this Section 10 shall survive any termination or expiration of this Agreement.  The term "Customer" specifically includes, without limitation, Imperial Sugar.  **In the event Broker engages legal counsel to enforce this or any other provision of this Agreement, Carrier shall bear all fees and expenses of such counsel if Broker prevails in such claim**.

(Doc. 10 at 4, § 10) (emphasis added).

Because Hogan retained legal counsel, filed suit, and prevailed in this action to enforce the Traffic Solicitation Clause, the Agreement's terms obligate Davis to pay "all fees and expenses" of Hogan's counsel.

B.  Discussion

In a diversity case such as this, federal courts follow state law regarding an award of attorneys' fees, absent conflict with a federal statute or court rule.  Weitz Co. v. MH Washington, 631 F.3d 510, 528 (8th Cir. 2011).  Under applicable Missouri law, a prevailing party cannot recover attorneys' fees from another party, except when allowed by contract or statute.  Berry v. Volkswagen Group of Am., Inc., 397 S.W.3d 425, 431 (Mo. 2013) (en banc); see Trim Fit, LLC v.

Dickey, 607 F.3d 528, 532 (8th Cir. 2010) (citing Essex Contracting, Inc. v. Jefferson Cnty., 277 S.W.3d 647, 657 (Mo. 2009) (en banc)).

Where, as here, "'a contract provides for the payment of attorneys' fees and expenses incurred in the enforcement of a contract provision, the trial court must comply with the terms of the contract and award them to the prevailing party.'" DocMagic, Inc. v. Mortgage P'ship of Am., L.L.C., 729 F.3d 808, 812 (8th Cir. 2013) (quoting Clean Uniform Co. St. Louis v. Magic Touch Cleaning, Inc., 300 S.W.3d 602, 612 (Mo. Ct. App. 2009)). "Under Missouri law [courts] must enforce a contract as written and according to the plain meaning of the words in the contract when the contract is clear and unambiguous." Id. (quoted case omitted). Nonetheless, reasonableness is an implied term in every contract for attorney's fees under Missouri law. Missouri ex rel. Chase Resorts, Inc. v. Campbell, 913 S.W.2d 832, 835 (Mo. Ct. App. 1996).

In Missouri, the trial judge is considered an expert on the subject of attorney's fees. O'Brien v. B.L.C. Ins. Co., 768 S.W.2d 64, 71 (Mo. 1989) (en banc). Though the Court has discretion to award reasonable attorney's fees under Missouri law, various factors are appropriately considered to determine the amount of attorney's fees to award. Gilliland v. Missouri Athletic Club, 273 S.W.3d 516, 523 (Mo. 2009) (en banc). An important consideration is the result achieved. O'Brien, 768 S.W.2d at 71. Other relevant factors in determining the reasonable value of attorneys' fees include the following:

> 1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; 2) the number of hours reasonably expended on the litigation; 3) the nature and character of the services rendered; 4) the degree of professional ability required; 5) the nature and importance of the subject matter; 6) the amount involved or the result obtained; and 7) the vigor of the opposition.

Berry, 397 S.W.3d at 431 (quoted case omitted).  The Court now reviews Hogan's claimed attorney's fees and expenses, and Davis's arguments in opposition thereto.

### 1. Result Achieved

Hogan prevailed at trial on its sole claim presented to the jury, breach of contract.  Hogan established that Davis received nearly $250,000 in revenues from its improper solicitation of Imperial Sugar freight, and the jury awarded Hogan the full amount of damages it was entitled to under the parties' Agreement – twenty percent of the transportation revenue on the movement of the traffic – after less than an hour of deliberation.  Hogan also prevailed in pretrial proceedings by successfully opposing Davis's motions for judgment on the pleadings and for summary judgment, and it obtained the exclusion of most of Davis's expert witness's testimony.

Davis asserts that Hogan was not successful on its dismissed claims in Counts II and III and that fees are not warranted for legal services spent on unsuccessful claims, citing McClain v. Papka, 108 S.W.3d 48, 54 (Mo. Ct. App. 2003).  Davis also states that Hogan did not reduce its claimed attorney's fees for the voluntarily dismissed claims, although the parties' Stipulation for Dismissal of those claims required the parties to bear their own fees and expenses related thereto.  Davis makes no effort to identify any fees and expenses attributed to the dismissed claims, however, and asserts only that if the case had "dealt solely on breach of the Traffic Solicitation Clause" the fees and expenses "obviously would have totaled far less than [the] $161,000" that had been expended at the time of dismissal.  Def.'s Opp. at 5.[2]

---

[2]Davis also cites Loggins v. Delo, 999 F.2d 364, 369 (8th Cir. 1993), but Loggins was a federal civil rights case involving a fee award under 42 U.S.C. § 1988, not Missouri law, and therefore is inapplicable in the context of this case.

Hogan replies that the focus should be on its success on its breach of contract claim and not the fact that it dismissed two similar claims, based on the same facts, prior to trial and prior to the time Davis would have incurred any fees to oppose them on summary judgment. Hogan asserts that its breach of the duty of good faith and fair dealing claim mirrored its breach of contract claim, and "served as a backdrop against the notion that Davis Transfer did not breach the express terms of the contract," and its tortious interference claim was based on Davis's use of confidential pricing information to "poach Imperial Sugar in order to undermine Hogan and cut the middle man out." (Doc. 157 at 8.) Hogan asserts that under these circumstances and considering its excellent result, the Court should find the two dismissed claims were inextricably intertwined with its breach of contract claim and make no fee reduction based on its voluntary dismissal of the claims.

The parties have not cited and the Court in independent research has not found a Missouri case that addresses an award of contractual attorney's fees where a prevailing party also voluntarily dismissed related claims. Where a prevailing party is successful on some but not all of its contract-based claims, Missouri courts restrict attorney fee awards to claims on which the party prevailed. See, e.g., Miller v. Gammon & Sons, Inc., 67 S.W.3d 613, 625-26 (Mo. Ct. App. 2001) (landlord was a prevailing party on claim for rent due under lease, though it did not recover the entire amount sought, and was entitled to contractual attorney's fees on that claim; but claim for structural repairs to a parking lot was not covered by the lease, and therefore attorney's fees related to the claim were not based on contract and were not recoverable); Schnucks Carrollton Corp. v. Bridgeton Health & Fitness, Inc., 884 S.W.2d 733, 739-40 (Mo. Ct. App. 1994) (landlord was prevailing party and entitled to contractual attorney's fees on claim enforcing defendant's obligations under lease and guarantee thereof, but not on unsuccessful claim for double rent based on holdover tenancy).

The <u>Miller</u> and <u>Schnucks</u> cases are factually distinguishable from the instant case, because there the prevailing parties lost at trial on their unsuccessful claims, rather than voluntarily dismissing them. A prevailing party would necessarily have expended more attorney's fees on unsuccessful claims pursued throughout a case, than where claims were dismissed prior to the filing of a summary judgment motion. Nevertheless, based on these authorities, the Court will assume that under Missouri law it is appropriate to deduct contractual attorney's fees related to a separate claim that was voluntarily dismissed. This assumption is supported in this case by the parties' Stipulation for Dismissal, in which the parties agreed that each would bear its own attorney's fees and costs with respect to the dismissed claims. (Doc. 75.)

To the extent Davis argues the Court should decline to award Hogan any of its attorney's fees because it did not reduce or allocate its fee request with respect to the dismissed claims, this unsupported argument fails. Because trial courts are considered experts on the issue of awarding attorney fees in Missouri, they may award such fees without the aid of evidence. <u>Kansas City Live Block 139 Retail, LLC v. Fran's K.C. Ltd</u>, 504 S.W.3d 725, 737 (Mo. Ct. App. 2016) (citing cases). As a result, the "failure to allocate or segregate is generally not fatal to the prevailing party's award of attorney fees." <u>Id.</u> (citing cases).

A claim for breach of the covenant of good faith and fair dealing is a contractual claim under Missouri law. <u>Koger v. Hartford Life Ins. Co.</u>, 28 S.W.3d 405, 413 (Mo. Ct. App. 2000). This claim mirrored Hogan's successful breach of contract claim and was based on the same provision of the parties' Agreement. Any discovery or other activity relating to Hogan's good faith and fair dealing claim would exactly correlate to its breach of contract claim. As a result, the Court will not reduce Hogan's attorney's fees because of the voluntary dismissal of this claim.

Hogan's tortious interference claim is different. To state a claim for intentional interference with a contract or business relationship under Missouri law, a plaintiff must establish (1) a contract or valid business relationship; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct. Nazeri v. Missouri Valley Coll., 860 S.W.2d 303, 316 (Mo. 1993) (en banc).

Because the tort claim required Hogan to prove elements in addition to the existence and breach of the contract, it is possible Hogan incurred attorney's fees related to the claim separate from those it incurred on the contract claims. However, Davis fails to identify a single time entry, deposition question, or discovery request related to the tortious interference claim, nor does it offer a proposed percentage fee reduction, which weakens its argument and offers no guidance to the Court.

Hogan's claim for tortious interference was added in July 2017, approximately eleven months after the case was filed in state court, and was voluntarily dismissed in December 2017, five months later. The claim was largely based on the same set of facts as the breach of contract claim. Hogan's detailed billing records show that it incurred approximately $100,000 in attorney's fees during the period July 1, 2017 through December 31, 2017. However, most of the approximately $53,000 in fees Hogan incurred from mid-October through December 2017 were expended in responding to Davis's motion for summary judgment, which did not address the tortious interference claim. (Doc. 51.)

To the extent the tortious interference claim implicated some additional work, despite Davis's failure to point to even a single time entry that the dismissed claim entailed, it appears any such additional work was minimal. The Court will assume the tortious interference claim entailed

some slight additional work separate from Hogan's contract claims, and will reduce Hogan's fee award by two percent to account for its lack of success on the tort claim.

### 2. *Rates Charged and Hours Expended*

The Court finds that the rates charged by Hogan's attorneys and paralegals involved in the case were reasonable and well in line with rates charged by other attorneys in St. Louis for similar services, based on the Court's general familiarity with rates charged by attorneys in St. Louis, its experience in fee disputes, and its review of the 2017 list of attorney billing rates in the Missouri Lawyer's Weekly. The rates were also reasonable when the Court considers the nature and character of the services provided by Hogan's attorneys, their expertise and performance, and the successful results they obtained in this case.

The total hours expended were also reasonable under the circumstances presented, especially considering the forceful defense offered by Davis to what initially appeared to be a relatively simple breach of contract case. Davis vigorously defended Hogan's claims by pursuing novel defenses and engaging in significant discovery and motion practice, which changed the case from a relatively simple action for breach of contract to a more complicated lawsuit. Davis filed both a motion for judgment on the pleadings and a motion for summary judgment, despite the Court having found the contract language to be ambiguous. Mem. and Order of Apr. 27, 2017 (Doc. 32 at 6). Davis's motions raised complex issues regarding contract ambiguity and interpretation. Among other things, Davis sought summary judgment on an unpleaded affirmative defense of prior material breach.

Further, Davis's arguments in its dispositive motions, in opposing Hogan's Daubert motion, and in support of its requested jury instructions were often undeveloped and conclusory, which required Hogan and the Court to engage in extensive research to find and articulate the law, and thus required Hogan to expend additional fees. The proposed testimony of Davis's expert witness raised

complicated issues concerning the permissible scope of expert testimony in contract interpretation cases. And, as previously noted, Davis submitted thirty-seven proposed jury instructions, including at least three separate converse instructions and numerous non-MAI instructions stating legal propositions drawn directly from cases, which required Hogan to incur substantial additional fees to respond to these.

Although the attorney's fees Hogan seeks are more than the damages the jury awarded, Hogan obtained the complete relief it sought and, in general, a "party cannot litigate tenaciously and then be heard to complain about the time necessarily spent overcoming its vigorous defense." Kansas City Live, 502 S.W.3d at 738 (quoted cases omitted); see Bacon v. Uhl, 173 S.W.3d 390, 399 (Mo. Ct. App. 2005) (fee award was not an abuse of discretion where much of the fees expended were caused by the defendants' defense). Further, under Missouri law, "While an award of attorneys' fees should have some relationship to the award, 'there is no established principle that the fee may not exceed the damages awarded.'" Berry, 397 S.W.3d at 431 (quoting O'Brien, 768 S.W.2d at 71). And, "Where the claim to attorney's fees is based upon a contract, the court must adhere to the terms of the contract[.]" Harris v. Union Electric Co., 766 S.W.2d 80, 89 (Mo. 1989) (en banc).

Based on the defense offered by Davis in this case, the Court is confident there was no "overlawyering" as a result of Hogan using two attorneys for pretrial and trial proceedings, particularly where Davis has not identified a single instance of allegedly duplicative or inefficient use of attorney time. The Court's review of the billing records does not reveal any needlessly duplicated work. Moreover, Davis itself utilized two attorneys in this case, so it is facially unpersuasive that it complains about Hogan doing so.

### 3. Other Relevant Factors

As stated above, this case required extensive briefing on difficult issues regarding contract ambiguity, contract interpretation, the permissible scope of expert testimony in contract interpretation cases, and jury instruction issues. Hogan overcame both of Davis's dispositive motions, secured the exclusion of most of Davis's expert testimony, and succeeded in obtaining a jury verdict for all of its damages, which indicates its attorneys exercised a high degree of professional ability.

The subject matter of this case was very important to Hogan as a means of safeguarding its business model as a freight broker and third-party logistics provider, by protecting the integrity of the traffic solicitation clause present in its agreements with hundreds of other freight carriers in addition to Davis.

Finally, the Court rejects outright Davis's argument that the entirety of Hogan's fees are unreasonable because the amount in controversy did not justify litigation "in a dispute that Hogan knew or should have known would result in no more than a $48,846.67 judgment in accordance with the contract terms." (Doc. 149 at 4.) Establishing the validity of the Traffic Solicitation Clause in the parties' Agreement and enforcing its contractual rights was important to Hogan's business model for the reasons stated above. Further, because the parties' Agreement entitled Hogan to its attorney's fees and expenses incurred if it prevailed in an action to enforce the Agreement's terms, its recovery was never limited to twenty percent of the revenue Davis earned in violation of the Traffic Solicitation Clause, and Davis knew this.

The Court strongly condemns Davis's disclosure of confidential mediation communications to support its argument, and hereby strikes all such references from the record. The disclosure of confidential mediation communications violates the Court's Local Rules concerning alternative

dispute resolution, which state in pertinent part: "Alternative dispute resolution proceedings are private and confidential. . . . . All written and oral communications made or disclosed to the neutral are confidential and may not be disclosed by the neutral, any party, or other participant, unless the parties agree in writing." E.D. Mo. L.R. 6.04(A). The disclosure also violates the USA&M Agreement to Mediate the parties signed before mediating this case, which forbids disclosure of any communications made during the course of the mediation, and explicitly states that such communications are "confidential and not admissible in any court or administrative procedure" unless all parties and the mediator agree in writing. (Pl.'s Reply (Doc. 157), Ex. B at 2, ¶ c.) There was no agreement between the parties or signed by the mediator to permit Davis to disclose the confidential mediation communications in this case.

There is no justification for Davis's counsel's conduct in this respect, and such conduct is undoubtedly sanctionable. The Court in the exercise of its discretion will not impose a monetary sanction on Davis or its counsel in this case, but does not consider the improper evidence, strikes it from the record, and strongly cautions Davis's counsel not to engage in similar conduct in the future.

C. <u>Conclusion as to Attorney's Fees</u>

As discussed above, the Court finds that Hogan's attorney's fees sought pursuant to the language of the parties' Agreement are reasonable. The Court will award Hogan its attorney's fees in the amount of $254,553.50, reduced by two percent–$5,091.07–for fees attributable to its dismissed tortious interference claim, for a fee award of $249,462.43.

D. <u>Contractual Expenses</u>

Pursuant to the terms of the Agreement, Hogan is entitled to recover from Davis "all . . . expenses of [Hogan's] counsel" if Hogan prevails on a claim for breach of the Agreement. (Doc.

10 at 4, § 10.) Davis does not object to any of Hogan's claimed expenses, except to the extent they may duplicate any costs awarded pursuant to 28 U.S.C. § 1920. By using the language "all . . . expenses," the parties agreed that all of Hogan's legal expenses were to be paid by the breaching party if litigation was necessary to enforce the contract. This contractual language "override[s] the strictures of § 1920." Weitz Co., 631 F.3d at 535.

Under the terms of the Agreement and the Eighth Circuit's statement in Weitz Co., "all expenses" includes deposition costs, travel expenses, filing fee, service fees, and the other categories of expenses for which Hogan seeks to recover. The Court will award Hogan all of its expenses incurred, including those the Court determined did not qualify as statutory costs pursuant to § 1920: the $104.40 state court filing fee; the $435.00 private process server fees; the $369.60 cost of the expedited rough ASCII transcript of Mr. Strickler's deposition; and the $200.00 rental cost of the hotel meeting room for depositions.

Hogan's expenses as listed in Exhibit E to its Motion for Attorney's Fees total $10,425.95. Each expense that was included in Hogan's Bill of Cost is also listed on Exhibit E. Therefore, it is necessary for the Court to deduct from Hogan's list of total expenses the items of cost that were taxed pursuant to 28 U.S.C. § 1920, as follows:

| | |
|---|---|
| • Witness fee - Katherlin Wall subpoena | $    40.00 |
| • Videographer fee - Katherlin Wall deposition | $  425.00 |
| • Deposition transcript - Katherlin Wall | $  524.30 |
| • Deposition transcript - Benjamin Strickler | $  302.30 |
| • Deposition transcript - Jeremy Garrison | $  320.50 |
| • Deposition transcript - Todd Davis | $  794.85 |
| • Deposition transcript - Henry Seaton | $1,625.72 |
| • Deposition transcript - Rick Fenner | $   880.00 |
|   TOTAL | $4,912.67 |

Consequently, Hogan will be awarded its contractual expenses in the amount of $5,513.28.[3]

## IV. Conclusion

For the foregoing reasons, plaintiff Hogan Logistics, Inc.'s Bill of Costs will be granted in part and taxed against defendant Davis Transfer Company, Inc. in the amount of $4,912.67. Plaintiff's Motion for Attorney's Fees is granted as set forth above, and plaintiff Hogan is entitled to judgment against defendant Davis for contractual attorney's fees in the amount of $249,462.43 and contractual expenses in the amount of $5,513.28. Post-judgment interest shall accrue at the federal statutory rate, and an amended judgment will issue separately.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Hogan Logistics, Inc.'s Bill of Costs is **GRANTED** to the extent that costs will be taxed in its favor in the amount of Four Thousand Nine Hundred Twelve Dollars and Sixty-Seven Cents ($4,912.67).  [Doc. 148]

**IT IS FURTHER ORDERED** that the Clerk of the Court shall tax costs against defendant Davis Transfer Company, Inc. in the amount of Four Thousand Nine Hundred Twelve Dollars and Sixty-Seven Cents ($4,912.67).

**IT IS FURTHER ORDERED** that plaintiff Hogan Logistics, Inc.'s Motion for Attorney's Fees is **GRANTED** to the extent that Hogan is entitled to judgment against defendant Davis Transfer Company, Inc. for contractual attorney's fees in the amount of Two Hundred Forty-Nine Thousand Four Hundred Sixty-Two Dollars and Forty-Three Cents ($249,462.43), and contractual expenses in the amount of Five Thousand Five Hundred Thirteen Dollars and Twenty-Eight Cents ($5,513.28).  [Doc. 144]

---

[3] $10,425.95 - $4,912.67 = $5,513.28.

**IT IS FINALLY ORDERED** that the Court will enter an Amended Judgment in accordance with this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  19th  day of July, 2018.